# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone<br>Seized as FP&F No. 2023565500000601 Line Item 0003<br>("Target Device") | )<br>)<br>)  Case No. '22 MJ8442<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324(a)(1)(A)(ii) | Transportation of Certain Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Allen Cherry, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Allen Cherry, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: __11/07/2022__

_____
*Judge's signature*

City and state: San Diego, California      HON. Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Allen Cherry, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Apple iPhone
> Seized as FP&F No. 2023565500000601 Item 0003
> **("Target Device")**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii) (Transportation of Certain Aliens), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Brian DANG for attempting to transport and move non-citizens without legal status within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol (USBP), San Diego Sector located at 3752 Beyer Blvd. Bldg. 24 in San Diego, California.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2019 and am currently assigned to the Campo Station Abatement Team (CSAT) at the Campo Border Patrol Station. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain

communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set

forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to transport non-citizens without legal status from Mexico into the United States and within the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of non-citizens without legal status;

   c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of non-citizens without legal status;

   d. tending to identify travel to or presence at locations such as stash houses, load houses, or delivery points involved in the transportation, or harboring of non-citizens without legal status;

   e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

4

# FACTS SUPPORTING PROBABLE CAUSE

11. On October 10, 2022, Border Patrol Agents A. Cherry, D. Honore, and A. Guzman were conducting assigned duties in Campo Border Patrol Station's Area of Responsibility. All Agents were in their full rough duty uniform. Agents Cherry and Guzman were riding together in their assigned marked Border Patrol Vehicle with functioning emergency lights and siren. Agent Honore was operating her assigned un-marked Border Patrol Vehicle with functioning emergency lights and siren.

12. At approximately 9:45 AM, Agent Honore was parked at the intersection of Forrest Gate Road and State Route 94 (SR-94) when she observed a white Honda Civic traveling east drastically slowdown in the middle of the intersection while the driver, later identified as the defendant, Brain DANG, looked directly at Agent Honore. Agent Honore then pulled behind the Civic as it accelerated away at a fast rate of speed, and then press the breaks and swerve into the westbound lane multiple times. Agent Honore, via service radio, requested any Agents in the nearby area with a marked Border Patrol vehicle to assist. Agent Honore observed the Civic stop several times in the middle of SR-94, as well as swerve into oncoming traffic and then turn north on Buckman Springs Road.

13. Agents Cherry and Guzman, who were further north on Buckman Springs road, notified Agent Honore that they would be responding. Agent Guzman was dropped off along Buckman Springs Road with a Vehicle Immobilization Device (VID) in the event the Civic failed to yield. Agent Cherry traveled further south to await the passing of the Civic. Once the Civic passed Agent Cherry, Agent Cherry positioned his vehicle behind the Civic and activated his emergency lights and siren. The Civic failed to yield and immediately accelerated, swerving into the southbound lane trying to get ahead of multiple vehicles before swerving back in the northbound lane in an attempt to get away from Agents. Agent Guzman readied the VID as the Civic neared his location. Agent Guzman deployed the VID but the driver, DANG, saw the VID and swerved off the road down and drove down an embankment to avoid the VID. DANG exited the vehicle and raised his

hands. Agent Cherry walked over to the Civic and observed two individuals, later identified as the material witnesses, Rafael GONZALEZ-Rendon, and Dunaciano TRINIDAD-Martinez, in the back seat. Agent Cherry conducted an immigration inspection, GONZALEZ and TRINIDAD stated they were citizens of Mexico without any immigration documents which would allow them to enter or remain in the United States legally.

14. At approximately 9:08 AM, Agent Cherry placed DANG under arrest. The location of the arrest was approximately 11.5 miles north of the United States/Mexico International Boundary and approximately 15 miles northeast of the Tecate, California Port of Entry.

15. At the time of arrest, an Apple iPhone (**Target Device**), was recovered from the floorboards of the driver's seat. This device was subsequently seized.

16. Material Witnesses, Rafael GONZALEZ-Rendon and Dunaciano TRINIDAD-Martinez stated they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. GONZALEZ and TRINIDAD stated that smuggling arrangements were made prior to entering the United States. GONZALEZ stated he was going to pay approximately 200,000 Mexican Pesos if successfully smuggled into the United States. TRINIDAD stated he was going to pay approximately $8,500 USD if successfully smuggled into the United States. GONZALEZ and TRINIDAD stated that, prior to crossing into the United States, they were shown a photo of the vehicle that would be picking them up, a white sedan. GONZALEZ stated that when the vehicle pulled up to their location it honked, and GONZALEZ and TRINIDAD entered. GONZALEZ stated he feared for his life. TRINIDAD was able to identify the defendant, DANG as the driver.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names,

electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on September 10, 2022, through October 10, 2022.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

20. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

22. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

                            Allen Cherry
                            Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 7th day of November 2022.

HON. JILL L. BURKHARDT
United States Magistrate Judge

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Apple iPhone
Seized as FP&F No. 2023565500000601 Item 0003
**("Target Device")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector, located at 3752 Beyer Blvd. Bldg. 24, in San Diego, California.

# ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 10, 2022, through October 10, 2022**:

a. tending to indicate efforts to transport non-citizens without legal status from Mexico into the United States, and within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of non-citizens without legal status;

c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of non-citizens without legal status;

d. tending to identify travel to or presence at locations, such as stash houses, load houses, or delivery points involved in the transportation of non-citizens without legal status;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii).